Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E, #1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

Jeffrey D. Kaliel (SBN 238293)
**KALIEL GOLD PLLC**
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Sophia Goren Gold (SBN 307971)
**KALIEL GOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

*Counsel for Plaintiff and Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR PULBROOK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FTD, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Taylor Pulbrook ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant FTD, LLC ("Defendant" or "FTD"). Plaintiff makes the following allegations based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff which are based on her personal knowledge and alleges the following:

**PRELIMINARY STATEMENT**

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant FTD, LLC arising from its use of deceptive addition of hidden fees which unfairly inflates the prices of floral deliveries over and above the advertised prices.

2. When consumers purchase flowers for delivery through FTD's website, FTD prominently advertises pricing that is drastically altered by the time the payment screen populates. On the payment screen consumers are surprised with surreptitiously added "Delivery Fee" (collectively "Fees") to their online floral delivery.

3. As discussed in detail herein, the assessment of these Fees is deceptive and unfair, since, a) FTD advertised one price for floral deliveries, only to later disclose a higher, different price later in the checkout process; and b) the Fees are in actuality simply the price of ordering flowers for delivery.

4. At various stages of the ordering process, FTD's website asks consumers to input their delivery details (i.e., delivery zip code and date) to show available products and pricing. Despite this, throughout the entirety of the ordering process, FTD displays a single price for floral *delivery*, up until the very last step. The last-minute addition of the "Delivery Fee" renders FTD's advertised pricing false and a classic bait-and-switch. Obscuring the total price to lure in consumers is deceptive and unfair because it "interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[1]

5. FTD misrepresents the actual costs of purchasing floral deliveries to consumers.

6. Hundreds of thousands of FTD customers like Plaintiff have been assessed hidden fees for which they did not bargain.

7. Consumers like Plaintiff reasonably understand FTD's advertised price to disclose the

---

[1] *Bringing Dark Patterns to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/reports/bringing-dark-patterns-light

1  total cost they will pay for their floral arrangements and for them to be delivered.

2      8.     By unfairly obscuring its true costs, FTD deceives consumers and gains an unfair
3  upper hand on competitors that fairly disclose their true prices and fees.

4      9.     Plaintiff brings her claims individually and on behalf of all similarly situated
5  consumers who have been misled by FTD's advertisements and seeks monetary damages and, among
6  other remedies, and an injunction to require FTD to disclose the truth to consumers about its prices
7  at the start of the purchase process.

## PARTIES

    10.     Plaintiff Taylor Pulbrook is a resident and a citizen of San Jose, California.

    11.     Defendant FTD, LLC is an online floral delivery company headquartered in Chicago, Illinois.

## JURISDICTION AND VENUE

    12.     This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant, including Plaintiff.

    13.     This Court has personal jurisdiction over Defendant because Defendant does substantial business in California.

    14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. FTD's Website Fails to Bind Users to Any Terms of Service

    15.     When a consumer selects an item for purchase on the FTD website, she then enters into a multi-step purchasing process in which she is shown screens that, in order: 1) show her shopping cart reflecting a subtotal (without the added delivery fees or applicable tax) and require entry of contact and delivery information; and (2) require entry of payment information.

    16.     During the multi-step checkout process, FTD users are never provided with FTD's terms of service; are never required to view such terms of service; and are never required to

1  affirmatively consent to terms of service.

2  17. Additionally, FTD fails to hyperlink its Terms of Service on any of the mentioned
3  screens shown to users.

### B. FTD Omits and Conceals Material Facts About the Costs of Floral Delivery

18. FTD, LLC is one of the largest online flower and gift delivery retailers in the world. It operates a website, FTD.com, which allow consumers to send flowers or gifts for delivery.

19. On the homepage and each product page, consumers are prompted to search for products by providing the delivery zip code and delivery date, as shown below.



20. After a consumer selects a product, they are required to input the delivery information (i.e. the delivery zip code and delivery date) before clicking the "ADD TO CART" button. A consumer does not need to scroll below that button to add a product to the cart. In the example below, the floral bouquet with delivery was advertised as $90.



21. Once added to the shopping cart, consumers click "CHECKOUT" to begin the multi-step purchase process. The shopping cart reflects the product and includes the delivery information. It provides an order subtotal of $90.00 and states that the applicable sales tax will be calculated at checkout. It does not disclose that there will be an additional fee for delivery.

22. On the first page of the checkout process, consumers are prompted to input contact and additional delivery information. After entering the information, FTD displays the "Order Summary" as the subtotal, tax (to be calculated at next step), and the delivery information. In the example below, the order subtotal remained $90 for the floral bouquet.

23. But on the final payment screen, the floral delivery price changed. FTD's "Order Summary" reflected a new charge of a "Delivery Fee" for $19.99. The cost of this fee was disclosed for the first time in the checkout process at the end of checkout, in small font. This fee changed the price to deliver the floral bouquet from the previously advertised $90 to an increased price of $109.99 plus applicable sales tax.

[Screenshot of FTD payment page showing Payment Information, Billing Information, Order Summary with Order Subtotal $90.00, Delivery Fee $19.99, Tax $10.86, Total $120.85, and Cart showing Classic Ivory – A Florist Original – Exquisite $90.00, Item #SYM-6022E, Delivery To: 1131 Grand St, Redwood City, CA 94061]

24. First, because the "Delivery Fees" are not disclosed until the final payment screen, FTD misrepresents the cost of the floral delivery on which the consumer relies in placing an order.

25. Defendant failed to disclose these mandatory delivery charges until the final payment screen, after the consumer had invested a significant amount of time selecting and finalizing their floral delivery and had already decided to purchase the flowers. Only then, were consumers finally informed of the additional "Delivery Fee" of $19.99 in the final subtotal, despite being required to enter the delivery zip and date before FTD's website allowed the product to be added to the shopping cart.

26. On its products page, under the advertised price and below the "ADD TO CART" button, FTD includes the following "Delivery Information":

[Screenshot showing:
**DELIVERY INFORMATION**
This item will be delivered by a local florist. We provide a 7-day fresh flower guarantee. See Delivery Details
The photos here are examples of our florist original style. The exact design and flowers in your custom bouquet will vary based on availability and the florist's interpretation of this arrangement. See Substitution Policy
ITEM: #SYM-6022E]

27. This statement fails to notify consumers of any additional fees for delivery. Indeed, only if consumers click the hyperlink labeled "Delivery Details" at the bottom of the products page, it reveals a pop up of FTD's Delivery Policy which states among other things, that "shipping and delivery charges start as low as $19.99".

7

CLASS ACTION COMPLAINT

28. FTD strategically buried their delivery price in a hyperlink at the bottom of the page and in small font to conceal this material information from its users and misrepresent the true cost of ordering from its website.

29. Reasonable consumers are not expected to ferret out material information, such as mandatory fees or the true price of a product or service, by scouring every hyperlink on a website.

30. By assessing "Delivery Fees" to all floral arrangement orders placed on FTD's website, the advertised price for any specific floral arrangement for delivery is false.

31. By unfairly obscuring the true price to consumers, FTD deceives consumers and gains an unfair upper hand on competitors that fairly and transparently disclose their mandatory fees. Indeed, other major online flower delivery providers in the U.S. do not assess fees outside of those properly disclosed at the outset of a consumer's order.

30. In short, the disclosed item cost on FTD's website is not accurate. The *actual* cost for flower delivery is the listed subtotal *plus* the "Delivery Fee" that FTD deceptively adds late in the ordering process.

31. FTD does not inform consumers the true costs of its floral delivery service and it misrepresents the price of any given floral delivery, when in fact those costs are actually higher.

32. Moreover, the additional fees assessed are never reasonably disclosed to consumers until it shows up on the final page of checkout as a line item in their order summary—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that additional, mandatory fees will be imposed on their purchases.

33. Many consumers do not notice these fees are being added to their order. And others still notice the previously undisclosed fees but decide to go through with the purchase anyway because they have already invested substantial time and effort inputting their information into the FTD's system. So it doesn't make sense to start over and research whether there is a way to avoid these fees. The deceptive checkout practice has done its job and diverted the sale to FTD.

34. Further, because Defendant waited until the end of the checkout process to disclose the true price, it is difficult for consumers to accurately compare floral delivery prices across other online flower delivery providers. Not only does this frustrate comparison shopping, but this drip

pricing also impeded competition and led consumers to pay more for their floral deliveries than they otherwise would have.

35. This is a classic case of "Drip pricing". "Drip pricing" works because as research has shown, "our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that 'investing more time into searching for it will not be worthwhile.'"[2]

36. By unfairly obscuring its delivery charges to consumers, FTD deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true charges.

### D. The Delivery Fees Are Junk Fees That Violate Federal Guidance

37. FTD's fees are precisely the type of "Junk Fees" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

38. As the Federal Trade Commission said recently in its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

---

[2] Santul Narkar, *It's a Great Deal, Before the 'Drip Pricing'*, New York Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University).

9

CLASS ACTION COMPLAINT

39. In July of 2024, California amended its Consumer Legal Remedies Act ("CLRA") to make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

40. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, *How to Make Effective Disclosures in Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

41. Defendant violates federal guidance by adding the "Delivery Fees" as a line item well after the consumer "add[s] to shopping cart", and by failing to disclose the nature of these fees and whether consumers are getting any benefit at all from the fee charged.

E. **Plaintiff Pulbrook's Experience**

42. Plaintiff Pulbrook used the FTD website to place a floral arrangement delivery order on January 24, 2025.

43. When using the website, Plaintiff was repeatedly informed that her floral delivery cart

10

CLASS ACTION COMPLAINT

total was $55.00.

44. However, Plaintiff's purchase included a mandatory "Delivery Fee" amounting to $19.99 that was tacked on to Plaintiff's order at the final checkout page.

45. Plaintiff would not have made the purchase if she had known that FTD would tack on additional fees.

46. If she had known the true cost of her order, she would have chosen another merchant for ordering her floral arrangement.

## CLASS ALLEGATIONS

47. Plaintiff brings this action on behalf of herself and a Class of similarly situated persons. The Class is defined as follows:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered floral arrangements through FTD.com, and were assessed so-called "Delivery Fees".

48. Excluded from the Class are any individuals who initiated arbitration proceedings related to the delivery fee, Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

49. **Numerosity**: At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

50. **Commonality**: There are questions of law or fact common to the Class, which include, but are not limited to the following:

    a.    Whether during the class period, Defendant deceptively represented its Fees for orders on FTD.com;

    b.    Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

    c.    Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

    d.    Whether Defendant's alleged conduct constitutes violations of the laws asserted;

    e.    Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

    f.    Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

    g.    Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent the amount for orders on FTD.com.

51.    **Typicality**:  Like Plaintiff, many other consumers ordered floral arrangements for delivery from FTD's website, believing that the price reflected throughout the check-out process represented the total Plaintiff and other consumer's would pay for their order. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of FTD's floral arrangements delivery service. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

52.    **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

53.    **The Proposed Class Satisfies Prerequisites for Injunctive Relief**. Defendant has

acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering floral arrangements for delivery through FTD's website; there is no way for her to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

54. Specifically, Defendant should be ordered to disclose the true costs of its floral arrangements and delivery service.

55. Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

56. **The Proposed Class Satisfies the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

57. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-56 as if fully set forth herein.

58. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

59. Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant the Delivery Fees, which they did not agree to and could not reasonably avoid.

60. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

61. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

62. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-56 as if fully set forth herein.

64. Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

65. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

66. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

67. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

68. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

69. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

70. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting that the presence and nature of its Delivery Fees.

71. Defendant's acts and practices offend an established public policy of truthful

advertising and fee disclosure in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

72. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

73. Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

74. Defendant's business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

75. Plaintiff relied on Defendant's misrepresentations in making her purchase.

76. By falsely marketing its floral delivery services, Defendant deceived Plaintiff and Class members into making purchases they otherwise would not make.

77. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

78. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

79. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

80. Plaintiff has no adequate remedy at law in part because Defendant continues to add Courier and Service fees to purchases. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

## THIRD CLAIM FOR RELIEF

**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the Class)**

81. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-56 as if fully set forth herein.

82. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

83. Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

84. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

85. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

86. Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

87. Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

88. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-56 as if fully set forth herein.

89. This cause of action is brought pursuant to the Consumers Legal Remedies Act

(CLRA), California Civil Code § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's floral arrangement delivery services offered to consumers in exchange for payment are "transactions" within the meaning of California Civil Code § 1761(e). The floral delivery purchased by Plaintiff and the Class are "goods" and "services" within the meaning of California Civil Code § 1761(a).

90. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of floral arrangements:

    a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

    b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

    c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

    d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14)

    e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

    f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

91. Specifically, FTD falsely advertised the price of any given floral delivery on its website. FTD failed to clearly and conspicuously inform consumers in any disclosure, at any time,

17
CLASS ACTION COMPLAINT

that the so-called "Delivery Fees" would be tacked on to their purchase total at the last possible opportunity.

92. At no time does Defendant disclose the true cost of purchasing floral deliveries; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

93. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

94. Plaintiff also seek public injunctive relief, as described above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Class seek an Order:

1. Certifying the proposed Class;
2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;
3. Declaring the Defendant has committed the violations of law alleged herein;
4. Providing for any and all injunctive relief the Court deems appropriate;
5. Awarding statutory damages in the maximum amount for which the law provides;
6. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;
7. Providing for any and all equitable monetary relief the Court deems appropriate;
8. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9. Awarding Plaintiff their reasonable costs and expenses of suit, including attorneys' fees;

10. Awarding pre- and post-judgment interest to the extent the law allows; and

11. Providing such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: March 5, 2025

By: */s/ Scott Edelsberg*
Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067
Tel: (305) 975-3320
Email: scott@edelsberglaw.com

Jeffrey D. Kaliel (SBN 238293)
**KALIEL GOLD PLLC**
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Sophia Goren Gold (SBN 307971)
**KALIEL GOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com